NOT FOR PUBLICATION                                      [Docket No. 1]

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE**

| | |
|---|---|
| JAMES J. COOGAN III,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>SOCIAL SECURITY ADMINISTRATION<br>MICHAEL J. ASTRUE,<br>COMMISSIONER,<br><br>　　　　Defendant. | Civil No. 08-1387 (RMB)<br><br>**OPINION** |

APPEARANCES:

Cary L. Winslow, Esq.
Legal Services of New Jersey
100 Metroplex Drive at Plainfield Avenue
Edison, NJ 08817
　　Attorney for Plaintiff

Sandra Grossfeld, Esq.
Social Security Administration
26 Federal Plaza, Room 3904
New York, NY 10278
　　Attorney for Defendant

**BUMB**, United States District Judge:

**I.　INTRODUCTION**

　　This matter comes before the Court upon an appeal by the plaintiff, James J. Coogan, III, (the "Plaintiff") of the decision of an administrative law judge denying Plaintiff's application for Social Security disability benefits, pursuant to section 405(g) of title 42 of the United States Code.

1

**II.  BACKGROUND**

    **A.  Procedural Background**

Plaintiff filed an application for Social Security disability benefits on July 31, 2004, alleging a disability that began on June 5, 2004.  The claim was denied initially, and again upon reconsideration.  A hearing was held before Administrative Law Judge Daniel M. Shellhamer (the "ALJ") on May 31, 2006, where Plaintiff and a vocational expert, James Treihart, testified.  The following month, on July 20, 2006, the ALJ issued a decision denying Plaintiff's claim.  Plaintiff then filed an appeal of the ALJ's decision to the Appeals Council and the Appeals Council ordered that the case be remanded to the ALJ for further proceedings.  After a second hearing on April 11, 2007, the ALJ issued a decision again denying Plaintiff's application.  On January 14, 2008, this decision became the final decision of the Commissioner when the Appeals Counsel denied plaintiff's request for a review.  On March 18, 2008, Plaintiff filed the above-captioned action seeking review of the Commissioner's decision.

    **B.  Factual Background**

Plaintiff, a 38-year-old man, cannot read or write.  (Pl.'s Br. 2.)  (R. at 286.)  He lives with his elderly grandmother and helps her with simple household chores at his mother's direction.  (R. at 275-76.)  He has never been married and has two children,

neither of whom live with him. (Pl.'s Br. 2.)

Plaintiff began full-day special education classes in first grade and was classified as Neurologically Impaired by the Winslow Township Child Study Team. Id. An evaluation by a Child Study Team in 1982 revealed an IQ in the "below average" range. (Pl.'s Br. 3.) Plaintiff transferred to Hammonton Public School where he received resource assistance. (Pl.'s Br. 2.) He transferred again and attended Mullica Township class for the Neurologically Impaired before going to Yale Academy. Id. at 2-3. He was then placed in a residential school setting at the Burlington County Children's Home. Id. On July 24, 1986, at the age of 15, an IQ test, the "Wechsler Intelligence Scale for Children - Revised" (WISC-R), was administered to him by a school psychologist, which produced the following scores: a Verbal IQ of 68, a Performance IQ of 77, and a Full Scale IQ of 71. (R. at 167.) The psychologist's report notes, "The obtained intelligence results are identical with the results of [the] 1982 evaluation," and confirms that the scores were "a fairly good estimate of Jay's ability." (R. at 168.) After attending just one month of ninth grade at Atlantic City High School, Plaintiff dropped out of school in fall 1986, at age 16. (Pl.'s Br. 2.)

Plaintiff then began working as a change dispenser at a video-game arcade. Id. Unable to calculate change disbursements correctly, he was fired after earning only $336.69. Id. at 4.

Plaintiff's brother-in-law then found him a job as a helper to a forklift operator.  Id.  This job lasted for about a year; he was let go when the man who he had been assisting died.  Id.  In the late 1990's, Plaintiff worked for a few weeks a year aerating lawns for a landscaping company.  Id.  He began working for a marina in 2003 where he collected trash and assisted with retrieving boats.  Id.  Plaintiff was unable to perform this job alone because he could not read the names of the boats he was supposed to retrieve.  Id.  In 2004, through a work-release program, Plaintiff was hired at Wildwood laundry.  Id.  He worked there for approximately six months but, after the program ended, the laundry would not hire him because he could not read and, thus, could not ticket linens without assistance.  Id. at 4-5.

As an adult, Plaintiff has undergone two IQ tests.  Id. at 5-6.  On March 26, 1995, at the request of a state Disability Determination Service ("DDS"), licensed psychologist Richard T. Sparacio, Ed.D., administered the "Wechsler Adult Intelligence Scale - Revised" (WAIS-R) IQ test, which produced the following scores: a Verbal IQ of 77, a Performance IQ of 75, and a Full Scale IQ of 75.  Id. at 5.  On July 29, 2004, the Plaintiff saw psychologist Lawrence G. Mintzer, Ph.D., upon a referral by the state DDS.  Id. at 6.  Dr. Mintzer administered the "Wechsler Adult Intelligence Scale - III" (WAIS-III) and Plaintiff's IQ scores were as follows: a Verbal IQ of 71, a Performance IQ of

4

74, and a Full Scale IQ of 70. Id.

At the request of the state DDS, Plaintiff saw internist Ken Klausman, M.D., for a consultative visit on July 30, 2004. Plaintiff's complaints, relevant to this appeal, included swollen ankles and right leg pain. Dr. Klausman opined that Plaintiff had, "superficial varicose veins of the right lower extremity" and noted, "If more information is sought in reference to any stasis of the lower extremities, it may be advantageous to have a venous Doppler study performed . . . ." (R. at 219-222.) On August 31, 2004, a DDS physician reviewed Plaintiff's file and concluded that his impairment was not severe because he required no medication for symptom relief. (R. at 246.) Plaintiff's painful varicosities got progressively worse and, on April 22, 2005, he underwent surgical excision of the veins from his right calf. (R. at 255, 257.) The surgeon's postoperative diagnosis states, "Symptomatic varicose veins, right lower extremity, with incompetent greater saphenous vein and multiple secondary varicose veins." (R. at 255.) Plaintiff continued to experience right-leg pain and the variscosities "recurred in the thigh and medial aspect of the knee." (R. at 257.) In the proceeding below, the ALJ below found that Plaintiff's varicose veins constitute a "severe" impairment. (R. at 18.)

### III. STANDARD OF REVIEW

When reviewing a final decision of the Social Security

5

Commissioner, the Court must uphold the Commissioner's factual decisions if they are supported by "substantial evidence." 42 U.S.C. §§ 405(g), 1383(c)(3); Knepp v. Apfel, 204 F.3d 78, 83 (3d. Cir. 2000). This means, "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)); Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999). Where the ALJ's findings of fact are supported by substantial evidence, this Court is bound by the findings "even if [it] would have decided the factual inquiry differently." Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001); Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999). Thus, this Court must "review the evidence in its totality, but where it is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld." Ahearn v. Commissioner of Social Sec., 165 Fed. Appx. 212, 215 (3d Cir. 2006) (citing Daring v. Heckler, 727 F.2d 64, 70 (3d Cir. 1984); Monsour Med. Ctr. v. Heckler, 806 F.2d 1185, 1190-91 (3d Cir. 1986)).

The Commissioner "must adequately explain in the record his reason for rejecting or discrediting competent evidence." Ogden v. Bowen, 677 F. Supp. 273, 278 (M.D. Pa. 1987) (citing Brewster v. Heckler, 786 F.2d 581 (3d Cir. 1986)). Access to the

Commissioner's reasoning is essential to meaningful court review:

> Unless the [Commissioner] has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the Court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978) (citations omitted); see also Guerrero v. Commissioner of Social Sec., No. 05-1709, 2006 WL 1722356, at *3 (D.N.J. June 19, 2006) (stating that is the ALJ's responsibility "to analyze all the evidence and to provide adequate explanations when disregarding portions of it" (internal citation omitted)).

While the ALJ must review and consider pertinent medical evidence, review all non-medical evidence, and "explain [any] conciliations and rejections," Burnett v. Commissioner of Social Sec., 220 F.3d 112, 122 (3d Cir. 2000), "[t]here is no requirement that the ALJ discuss in [his] opinion every tidbit of evidence included in the record." Hur v. Barnhart, 94 Fed. Appx. 130, 133 (3d Cir. 2004); see also Fargnoli v. Halter, 247 F.3d 34, 42 (3d Cir. 2001) ("Although we do not expect the ALJ to make reference to every relevant treatment note in a case where the claimant . . . has voluminous medical records, we do expect the ALJ, as the factfinder, to consider and evaluate the medical evidence in the record consistent with his responsibilities under the regulations and case law."). Overall, the Court must set

aside the Commissioner's decision if the Commissioner did not take the entire record into account or failed to resolve evidentiary conflict.  Schonewolf v. Callahan, 972 F. Supp. 277, 284-85 (D.N.J. 1997) (citing Gober v. Mathews, 574 F.2d 772, 776 (3d Cir. 1978)).

In addition to the substantial evidence inquiry, this Court must review whether the administrative determination was made upon application of the correct legal standards.  Sykes v. Apfel, 228 F.3d 259, 262 (3d Cir. 2000); Friedberg v. Schweiker, 721 F.2d 445, 447 (3d Cir. 1983).  This Court's review of legal issues is plenary.  Sykes, 228 F.3d at 262; Schaudeck v. Commissioner of Social Sec., 181 F.3d 429, 431 (3d Cir. 1999).

**IV. DISCUSSION**

    **A.  Disability Definition**

The Social Security Act (the "Act") defines disability as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. §1382c(a)(3)(A).  The Act further states,

> [A]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in

>     the national economy, regardless of whether such work
>     exists in the immediate area in which he lives, or
>     whether a specific job vacancy exists for him, or
>     whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has promulgated a five-step sequential analysis for evaluating a claimant's disability, as outlined in 20 C.F.R. § 404.1520(a)(4)(I)-(v). <u>See also</u> <u>Giese v. Commissioner of Social Security</u>, 251 Fed. Appx. 799, 801-02 (3d. Cir. 2007).

1.  If the claimant currently is engaged in substantial gainful employment, he will be found "not disabled."

2.  If the claimant does not suffer from a "severe impairment," he will be found "not disabled."

3.  If the severe impairment meets or equals a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1 and has lasted or is expected to last for a continuous period of at least twelve months, or is expected to end in death, the claimant will be found "disabled."

4.  If the claimant is found to have the residual functional capacity ("RFC") to still perform his past relevant work ("PRW"), he will be found "not disabled."

5.  Finally, the Commissioner will consider the claimant's RFC, age, education and work experience to determine whether or not he is capable of performing other work which exists in the national economy. If he is incapable, a finding of disability will be entered. On the other hand, if the claimant can perform other work, he will be found "not disabled."

20 C.F.R. § 404.1520(a)(4)(I)-(v).

This analysis involves a shifting burden of proof. <u>Wallace v. Secretary of Health & Human Servs.</u>, 722 F.2d 1150, 1153 (3d Cir. 1983). In the first four steps of the analysis, the burden

is on the claimant to prove every element of her claim by a preponderance of the evidence.  In the final step, however, the Commissioner bears the burden of proving that work is available for the petitioner: "[o]nce a claimant has proved that he is unable to perform his former job, the burden shifts to the [Commissioner] to prove that there is some other kind of substantial gainful employment he is able to perform[.]"  Kangas v. Bowen, 823 F.2d 775, 777 (3d Cir. 1987); see also Olsen v. Schweiker, 703 F.2d 751, 753 (3d Cir. 1983).

   **C.   ALJ's Decision**

The issues in this case are whether the ALJ correctly applied Listing 12.05C in the Social Security Regulations and whether the ALJ set forth substantial evidence supporting his finding that the Plaintiff does not meet the requirements of Listing 12.05C.

In evaluating step three of the sequential analysis outlined above, the ALJ found that the Plaintiff did not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulations No. 4.  Specifically, the ALJ found that the Plaintiff was not mentally retarded under the requirements of 20 C.F.R. Part 404, Subprt P, App. 1, § 12.05C ("Listing 12.05C"), which reads:

> Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence

> demonstrates or supports onset of the impairment before age 22. The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied. . . .

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05. As Plaintiff must meet the requirements of only one of the four listed subsections, only subsection C is at issue here. Subsection C requires:

> A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function.

Id.

The Third Circuit has expressed Listing 12.05C as three-prong test requiring that a claimant must: (1) have a valid verbal, performance or full scale IQ of 60 through 70, (2) have a physical or other mental impairment imposing additional and significant work-related limitations of function, and (3) show that the mental retardation was initially manifested during the developmental period, i.e., before the age of 22. See Markle v. Barnhart, 324 F.3d 182, 187 (3d Cir. 2003).

### 1. The ALJ Incorrectly Applied Listing 12.05C

The ALJ's opinion begins by stating that "[he] has considered the claimant's borderline intellectual functioning under Listing 12.05(C) and 12.05(D)." (R. at 18.) He then recognizes that "the record contains multiple IQ tests reflecting different degrees of intellectual functioning," and states, "IQ tests are only part of the overall assessment and must be

11

considered with the established degree of functional limitation." (Id.)  This analysis is incorrect.  The Court finds nothing within Listing 12.05 itself, nor in relevant case law, supporting the ALJ's understanding that an "overall assessment" is required, of which the IQ test is only one factor.  On remand, the ALJ must find whether or not the claimant has a valid verbal, performance, or full scale IQ of 60 through 70.[1]  Then, apply that score to the requirements of Listing 12.05C.

>    **2.   The ALJ Failed to Set Forth Substantial Evidence Supporting His Finding That the Plaintiff Does Not Meet The Requirments of Listing 12.05C.**

When reviewing a final decision of the Social Security Commissioner, the Court must uphold the Commissioner's factual decisions if they are supported by "substantial evidence."  42 U.S.C. §§ 405(g), 1383(c)(3); Knepp v. Apfel, 204 F.3d 78, 83 (3d. Cir. 2000).  The Commissioner "must adequately explain in the record his reason for rejecting or discrediting competent evidence."  Ogden v. Bowen, 677 F. Supp. 273, 278 (M.D. Pa. 1987)

---

[1] It appears to be beyond dispute that the Plaintiff here does indeed have at least one IQ score of "60 through 70," as required by the Regulation.  The Regulation requires only one score to be in that range and it appears that Plaintiff has two such scores.  Plaintiff's 1986 WISC-R Verbal score was 68, see Williams v. Sullivan, 970 F.2d 1178, 1184 (3d Cir. 1992) ("[A] valid verbal scale IQ test . . . may be sufficient to establish mental retardation." (emphasis added)), and his 2004 WAIS-III Full Scale score was 70.  It seems, then, that in applying the first Markle prong, the only question before the ALJ on remand will be whether at least one of these scores was "valid".  (The concurring opinion by Judge Garth in Williams, 970 F.2d at 1189, suggests one reason why a score might be held to be invalid.)

(citing Brewster v. Heckler, 786 F.2d 581 (3d Cir. 1986)). The ALJ must review and consider pertinent medical evidence, review all non-medical evidence, and "explain [any] conciliations and rejections." Burnett v. Commissioner of Social Sec., 220 F.3d 112, 122 (3d Cir. 2000).

In this case, the ALJ's decision is not supported by substantial evidence. The ALJ's opinion recognizes "multiple IQ scores reflecting different degrees of intellectual functioning," but nonetheless finds only one of the IQ tests to be accurate. (R. at 18-19.) The apparent basis for this finding is that the test preferred by the ALJ is most consistent with his opinion of Plaintiff's general behaviors and abilities.[2] Id. This finding is confounding, as only validity, not the ALJ's opinion of the various tests' accuracy, is required by Listing 12.05C. In any event, were the Court to construe the ALJ opinion as finding that the discarded IQ tests were invalid, the ALJ's opinion fails to provide "substantial evidence" in support of such a finding. Recently, the Third Circuit has affirmed that failure to give appropriate weight to evidence in the record -- as the ALJ has failed to give appropriate weight to the relevant IQ tests here -- constitutes a lack of substantial evidence, "especially when [the evidence] reflect[s] expert judgment . . . ." Brownawell v.

---

[2] As explained above, it is not the ALJ's task to decide which of the IQ scores he prefers, as Listing 12.05C requires only one valid score in the applicable range.

13

Commissioner of Social Security, 554 F.3d 352 (3d Cir. 2008) (quoting Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000)).  To be clear, the Court recognizes that an ALJ may reject IQ scores that are inconsistent with the record but he must provide a legitimate basis for his decision.[3]  Markle v. Barnhart, 324 F.3d 182, 187 (3d Cir. 2003).  Here, the ALJ has failed to do so.

## V.   CONCLUSION

As the ALJ incorrectly applied the standard in Listing 12.05C and failed to set forth substantial evidence supporting his findings, this case is remanded for further proceedings in accordance with the foregoing Opinion.  An appropriate Order will issue this date.


Dated: February 27, 2009              s/Renée Marie Bumb
                                      RENÉE MARIE BUMB
                                      UNITED STATES DISTRICT JUDGE

---

[3] Based on the record below, the Court does not understand how the ALJ could proffer "substantial evidence" to set aside the lower IQ scores, particularly given that the plaintiff in Markle, 324 F.3d at 187, was so similarly situated to Plaintiff in this case.  The Court nonetheless remands to give the ALJ an opportunity to conduct the required analysis.